Scadden-Arps, representing CF Industries, Inc. and CF Industries Sales, Appellants in this matter. A series of errors in the district court led to a summary judgment ruling that cannot be sustained on appeal and that has left my client, CFI, to face trial in January and defend itself in claims for hundreds of millions of dollars in damages as a result of the West fire and explosion in 2013 without the evidence about the cause and origin of that fire and explosion. That evidence is exclusively in the possession of the ATF. I'd like to focus the argument on the two errors below that are the most serious and that require reversal of the grant of summary judgment here. First, the district court erred by allowing the ATF to create an almost exclusively ex parte record and then relying on that record to rule on the merits of the case. Well, how could he have evaluated the evidence without viewing it in camera? He could have evaluated evidence in camera, but that is not what was put in the ex parte record. Well, whatever was presented to him. How could he evaluate it? It was certainly appropriate for him to consider taking evidence or affidavits ex parte if they contained sensitive material that was the very material they were trying to prevent disclosure of, and there's plenty of case law on that point. That's not what happened here, though, and even where that is appropriate, the case law makes clear, this Court's case law in Ray Eisenberg and other cases, that it is also the obligation of the government to create as public a record as possible. Okay. Have you moved to supplement the record with what was shown ex parte to the district court? Supplement the Fifth Circuit record? The district court's record or our record? The ex parte record was only revealed to us after we filed our opening brief in the district court. Okay. Have you moved in this Court for a remand to get it supplement the record, supplement in the district court or here? Have you asked that all the ex, whatever was shown to Judge Smith, ex parte be made part of the record so that we can review it? I believe it is part of the record. No, it's not. It's not. According to us, it's not. There's the report that was shown to Judge Smith, and it is not in the district court record, and it's not in our record. The report, yes. No, we have not asked that the report be made. Okay. I apologize for the confusion, Judge Owen. So the record that was created in the court below consisted of materials that were filed under seal, so they were made available to us, materials that were filed entirely ex parte and under seal, so we had no idea what they were. We did not know what any of those materials were until after we filed our opening brief in this case, in which we argued that the primary error the district court committed was taking in this entire record ex parte. But then what did you get? We learned from that. Oh, I apologize. Then what did you get? After you filed your opening brief, you received documents, but you didn't file an amended brief saying, okay, we've got them now. It seems like it's sort of moot. No, Your Honor, it's not. If I can finish answering what happened with the investigative report, the ex parte record, which the ATF disclosed to us after we filed our brief, referenced the delivery of an investigative report to the district court, which I believe is what Judge Owen, you're referring to. Apparently, that report was walked to the court, shown to the judge. We don't know by whom or with what conversation. We understand it might be a thousand-page report shown to the judge and then taken away so that it was not left in the record with the court. So we have seen now the ex parte record, but our argument is you can't cure the decision on the merits below based on an ex parte record by giving me the ex parte record on appeal because this was a summary judgment ruling. We were entitled to see that record and then to supplement it with our own evidence countering the evidence that the court was considering. Well, have you now filed a brief saying you've seen it and here's the evidence you would have supplemented it with? I mean, you've got to show some harmful error for reversal. Yes, Your Honor. So what evidence would you have presented to the district court that would have created a fact question? In our reply brief, Your Honor, we are constrained in large degree by the timeline here. So we have an expedited appeal. We had ten days after they filed their response to file our response. The government offered to extend the briefing schedule, but that would extend us to a point at which any remedy this court could give us would be meaningless. We have a trial in January. The state court has stated unequivocally that he does not care what happens with the ATF or with this case. He will not continue that case. How long has it been since this incident took place? April 2013, Your Honor. And so the ATF has been investigating for more than three years. It has concluded its investigation of the cause and origin of the fire and explosion. It apparently is continuing its investigation into the identity of the perpetrator. But no one's been indicted? I'm sorry? No one's been indicted? There are no indictments that I'm aware of. Of course, it's possible there could be an under seal indictment, but I am not aware of one, nor is there anything in the record regarding that. Judge Owen, to your point about supplementing the record, we would require a reversal, and we have asked for that. We would require a reversal to go back Well, that would just send you back to the district court. You say you don't have time for that. Well, I think it is probably the only remedy that we can get. Now that we have seen the record, now that we know what is in it, and we have outlined in our reply brief the type of evidence that we would have submitted to counter the ATF's ex parte record, for example. In the ex parte record, there are declarations that suggest that parties had access to the site and could have collected their own evidence. We would certainly have filed declarations saying, number one, we were not a party to any lawsuit involving the West incident until June of 2013, and so the access they're talking about was not access that we had because we had no reason to be there. Number two, we would have submitted that there is unique evidence that only one party can have. One of the primary things that's done in the course of a fire and explosion investigation is the gathering of physical evidence, debris from the building, and then the mapping of the locations in which it's found. This is all standard procedure. It is not secret. It is not a That's the nub of this case. That's why we're here. Do you get that or not? Absolutely, Your Honor. And what should have happened below was a discussion of what do they have, even if they had to show what they had in ex parte, they should still have been able to say, for example, we have debris, we know that, that we collected, and we have a map of where it was located. That's extremely valuable information to an investigator who is trying to determine cause and origin. Our own experts could have evaluated that. We were not asking for the ATF's evaluative materials about what it thought that map means. We were asking only for the physical evidence and where it was found. They asserted in the ex parte record in declarations that this would reveal secret law enforcement techniques and thereby impair their usefulness. But there's no explanation, even in the ex parte record now revealed, of how. How would, for example, the next arsonist change his behavior based on where a piece of this West Fertilizer Building was located after this explosion? The linkage simply isn't there. It wasn't made even in the ex parte record. We don't know what's in that report, though. Correct. We have no idea. And that is because  No, Your Honor, we have not moved to make that part of the record. The ATF deliberately kept it out of the record. We don't know if the Court considered it. And so on remand, we would expect that we would do what should have happened in the first instance. What should have happened was the ATF should have been required to make as public a record as some ex parte discussion of the specifics. So, for example, the ATF could have said, we have witness statements taken from the employees of Why can't you get the witness statements? I know you say time has passed, but three years ago, you could have gotten witness statements as soon as you got sued. In fact, we could not, because the ATF interviewed people, as you would expect from the site, witnesses, et cetera, immediately after the fire and explosion, causing them to hire lawyers, which meant we could not take their depositions until the legal process proceeded to the point where their lawyers would allow us to take a formal deposition. Were they employees? They were employees? Yes. Many of them. Many more are plaintiffs. So they also are represented by counsel. These are not people that we could go out and do our own witness investigation of. In addition, this is not like the cases in which witness interviews are conducted in the type of investigation which the government is trying to determine if something happened. In other words, going to a company and saying, you're the accountant, tell me about how this worked, tell me about how that worked. Everyone knows who was interviewed. Everyone knows that all the employees of West Fertilizer were interviewed by law enforcement, because this is an investigation where obviously something has happened, this catastrophic event, and everyone will be interviewed about where they were, what they did, who they saw, et cetera, without any suggestion that that is going to imply the direction that ATF is headed. Now, even to the extent that that might be reflected, that their strategy or the direction they're headed in their investigation might be implicated, those materials could be redacted. To go back to the question about the timing of the explosion. Well, it seems to me what you're both after is who caused the explosion. Absolutely. And they don't want to disclose that because they're trying to catch the perpetrator. So what you really want is that, and they're not going to give that to you. Actually, Judge, I apologize. I misspoke. We are not after who caused it. The one thing I think even Mr. Poland will agree with is nobody thinks that my client set a fire in August in 2013. My client is a Chicago-based ammonium nitrate manufacturer. I don't imagine, and I think that the parties agree, there's no suggestion. Yeah, but you want to prove that we did nothing and that somebody else did this and it could not possibly have been our fault. Actually, we don't need the who, which is the only part they're still investigating and haven't made a public announcement of. What we need is the how. But the how leads to the who, doesn't it? Not necessarily, Your Honor. Not necessarily. So things like the mapping of debris, soil samples, samples of ammonium nitrate that remained at the scene. None of these things can be collected now. They were taken by ATF. There's only one set. There's no duplicate. Testing those materials is relevant to determining whether a fire was deliberately set and whether the scene might have been manipulated, which is relevant because we are defending product liability claims. So if there was manipulation of our product or if items were moved within the scene, it breaks the causal chain. That is critical to us. It does not matter who did that to our determination of the cause and origin. We don't think there's any suggestion that we did it, and we certainly would take that position. But y'all had face-to-face discussions with the government saying, give us this, and what's their answer to you, why they won't give you what you just asked for? We engaged in extensive negotiations with the government in an effort to get anything that the government could give us, including after the government made its public announcement that this was its conclusion and described its methodologies so that revealing its methodologies is no longer an issue. We went back to them and said, what can you tell us? How can you help us? We are already facing plaintiffs who are saying that the conclusion of the ATF, that this fire was incendiary, should not come into the trial because it is insufficiently supported, because there's no way to challenge or test what's the basis for it. Did it follow the NFPA, which we submitted? Did the investigative report that you've seen reflect any testing on the, on your product that would prove that it was spontaneously combustible, or that it had to have been set? Is any of that in the investigative report that would help you? We have not seen an actual investigative report, and I have not seen in the ex parte record there is no discussion of what the actual evidence, the physical evidence that we're looking at is, not what they have, and that is a failure in the record as well. We didn't, we thought that these ex parte filings were in accordance with the court's order in July of 2015, that the ATF simply update the court about the status of its investigation. It wasn't until after the announcement that the fire was incendiary that we went to reopen the issue with the court and asked to now start building a record to pursue our case I don't know if you know this, but are the plaintiffs in some way also inhibited from presenting their case because evidence is being withheld from them? Plaintiffs have been allowed to present experts who admit that they never tested any of the original evidence, and who are opining that our product was the cause of the fire and were effectively challenging it, and they have rejected arson. So we've got plaintiffs experts who have examined sort of a substitute set of evidence, or are just speculating, who say arson is either ruled out or unlikely, and then the actual expert, the ATF, the only party in exclusive possession of this evidence, who says, we've tested it, we've followed the NFPA, and the conclusion is arson. But we don't have access to that. This is the case, and I apologize, I know my time is up, this is the case in which the need of the litigant outweighs any law enforcement privilege that might be asserted here. But, Judge Owen, to your point, we think reversal is required to create the actual record of what there is, whether it in fact is covered by the law enforcement privilege, and then whether our need outweighs any interest that the government might have in not disclosing it. All right. Thank you. You've saved some time for rebuttal. Mr. Pellin. Good morning, and may it please the Court. Thomas Pullum for the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The ATF is currently engaged in one of the largest and most complex investigations it has ever undertaken, into a firearm explosion that killed 15 people, injured more than 100 more, and caused widespread property destruction. That investigation is active and ongoing. There's a compelling public interest in preserving law enforcement agencies' ability to protect the integrity of their ongoing investigations by preventing the disclosures of information that would harm those investigations. The question presented on this appeal is whether it was arbitrary and capricious for ATF to decline to interrupt its investigation in order to go through all of the evidence it to CFI in its State court civil litigation, despite the agency's judgment that doing so would interfere with its enforcement efforts. But you've been investigating for a long time. I mean, it's almost time to wrap this up, because litigants are being deprived of information and evidence that they need in this upcoming litigation. The investigation has been going on for several years, but keep in mind the nature of the event that happened in the investigation. But you've reached a conclusion. I thought the report, I thought the investigation was concluded in the sense that you know what caused it. No. ATF has concluded that this was a criminal event. That was the conclusion that they released publicly. It's an incendiary event, which means that someone intentionally set the fire. They are still investigating and trying to identify who committed this. And while there is a report into the cause and origin of the fire, these are not separate investigations with separate evidence. When ATF, when they hopefully identify the person or persons responsible for this and prosecutors bring, secure an indictment and try to prosecute, the evidence of what caused the fire will be evidence in that criminal case. Yeah, but you may never identify this person. So how do you keep holding up the litigation? You may never find the person. That is possible. You can be the Unabomber. You don't know. That takes years. I mean, ATF is diligently pursuing this. They've set up a tip line to gather information. They've offered a reward for information. How would you explain to us how it's going to impact your ability to prosecute someone to give basic information that she was describing? Well, exactly. The ATF investigators identified several harms that could be expected to occur from turning over evidence. One is tipping off the responsible parties to what ATF has that then those parties could use to evade responsibility. Another harm is hindering others from coming forward with information. If they know that every tip that's given is turned over to private parties to use, they may be less likely to do that. It also reveals the scope and nature of ATF's investigation and essentially discloses everything the government has done so far. The Supreme Court recognized that this was foremost among Congress's objectives in enacting Exemption 7 to the FOIA, which was to prevent the harm to enforcement efforts that follows from being — the government being forced to turn over everything it has in its case before the — Well, not everything, but you heard her describe what they want, the maps, where debris was located. If I could, Your Honor, maybe we could go through — we could just look at the scope of the request that was actually made, which is copies of any test results, access to any and all samples or physical evidence, copies of all interview reports, memoranda or interview transcripts, copies of all photographs. But they don't get everything they want. You're not giving them anything. On the contrary, when — during the course of the litigation, ATF made clear, as we have continued to make clear, that if CFI had targeted requests, ATF would review them expeditiously. And in this case, we did so, and we turned over specific items that CFI asked for. We turned over a photograph of the — several photographs of the crater, measurements of the crater. We turned over a voicemail recording made by a plant employee at the time of the explosion or shortly after. We turned over reports that ATF had commissioned from the Army Corps of Engineers relating to the size of the crater. So when CFI has come forward and said, here are specific items we need, ATF has looked at those individually and made a determination as to whether release of those items would interfere with its investigation. All right. Well, they want whatever evidence you have to show that this was not something caused purely by their product. It wasn't a spontaneous combustion. It wasn't some thing that they needed to defend themselves. Why can't you give them that? That's no secret. That is evidence of the crime that the government — So what? The whole — the crater is evidence of the crime. Well, the — It was said publicly that it's incendiary. So whoever did it knows you're looking for them. That's right. But the specific evidence that ATF has, that is not public. And there are — many courts have recognized that revealing the nature and scope of an investigation can cause harm to enforcement efforts. This comes up regularly in FOIA cases. We've cited several of those cases. The Sixth Circuit decision in Dickerson, the Ninth Circuit in Lewis, Seventh Circuit in Solar Sources. All of those were accompanied by — Let me just ask you hypothetically. Let's suppose somebody took some of their fertilizer and made a bomb out of it and ignited — exploded the bomb on the premises. I have — I'm not suggesting that's true. This is a far-fetched hypothetical. Why can't you tell them that? Why does that put at jeopardy your investigation or prosecution? Well, so one example that was — of a possible harm that was pointed to in a declaration was when agencies — or when a law enforcement agency has control over the information that has been made public, it is easier for them to determine who is responsible in two different ways. One problem that agencies have, and this is one of the agents described in the declaration, is that people come forward with false confessions. And they say, I did this, here's how I did this, I set up whatever device or, you know, I used these means. If information about those means hasn't been made public, then the only person who knows the precise means that were used, or in this case the precise, for example, location where the fire was set, the only people who know that are the parties responsible for the act and ATF. So ATF can use that kind of control over information in order to know who is making a false confession and who is making a true confession. So that's just one example that I think responds to what Your Honor is talking about. You see the dilemma here, because apparently you all know that CF Industries is not responsible for this fire, yet they may be on the hook for billions of dollars of damages. Well, this Court has in several different cases referred — you know, explained the policy preference for advancing criminal litigation ahead of civil litigation. And one of the civil discovery rules aren't used to get around the more strict criminal discovery rules and allow the government control over when information will be disclosed in its case. I don't know if you can answer this, but I don't know if there's a suspect or a target or someone up there. But if there's not, I mean, could this go on forever? We'll never solve this crime, so we'll never give over this information. And we can be here five years from now, ten years from now, because we're still investigating. We still think there's somebody out there. And until we find that person, if we ever find that person, they can never have this information? No. There could — there could come a point — I mean, we certainly hope this is not the case. ATF wants to identify who committed this act. There could come a case or a point at which the agency decides, you know, it's not likely that we're going to secure a prosecution, so we could turn over more evidence. And at that time, it would make a decision, you know, in light of the circumstances that were presented then. But here, we're looking at a request — I'd like to underscore that this is an APA action, where we're looking at the reasonableness of agency action at the time it was made. CFI made this sweeping request very early in the process. Well, now — and you all kept saying to the judge, well, wait till we've got — wait till we get our report done. Now the report's done. I mean, it doesn't seem like — things have moved. Things have — Well, with respect, Your Honor, I don't believe the government asked the judge to wait for the report. The government submitted a motion to dismiss or a motion for summary judgment. And the district court said, I need some more information, and scheduled a hearing. The government submitted ex parte declarations in advance of the scheduled hearing. And at that time, the district court suspended proceedings and asked for periodic updates until the report was done. I believe the thinking was that if this turned out, if ATF determined that this was not a criminal act and it was, you know, an accident or something else, then it would be likely to reconsider its position. Why can't you issue a report saying this was not a — this was not an accident, this was a criminal act, CFI is not responsible for the explosion? Why can't you issue that? They can use just those bare facts. So if those are the facts that CFI wants, it could submit a TUI request for either, you know, an affidavit or for testimony to that effect, and the agency could evaluate. I thought y'all had discussions trying to narrow the differences between you, and y'all have given what? We released information in response to targeted requests that CFI made. So CFI identified specific things. Is there anything else you're willing to give them at this moment? Well, as I said, if CFI could make a request. Well, no. They don't know what you've got. You know what you've got. My question to you, are you willing to give them anything else? Are you saying we're not going to give them anything else, period? We've given as much as we're going to give. Are you willing to give them more right now? There may be specific items, but — Then give it to them. Why don't you give it to them? Because that's not a — law enforcement agencies should not be burdened with the continual responsibility to look through all of their evidence. This is a different kind of case. All right? They're up — it's November 1st. They have a trial in January. You have information that you can release. You have said it was — the fire was set. It's a criminal act. Give them the information that supports that, just to — just related to their product. You don't have to say we can't find the guy, we can't find whatever. You don't have to give them any information about witnesses who have come forward or anything. Well, that's what they asked for. Well, maybe they changed their mind by now. Well, if CFI has changed its mind, then ATF would welcome a request specifically — Okay. I'm going to — they don't know what you've got. They've asked for, globally, whatever they can get from you. I'm asking you, as a representative of the government, do you have information that you're willing to turn over to them that you haven't already turned over to them? I don't know if there are specific items, because, again, agents don't, you know, continually look at evidence to decide whether something might be — What if we ordered you to do that, and we said, we're ordering you to turn over everything that will not impair your investigation, would there be things to turn over? I don't know. That is something that ATF would have to — How could you not know? Because I'm not familiar with all of the evidence that's been collected. I have not been involved in this investigation. That's a determination for the agents to make, given their familiarity with the evidence and with the harms that might be expected to follow from release. And if I could just return to the posture, which is an APA action under which the agency acted in a reasonable manner. Now, ATF regulations — or rather, DOJ regulations, which CFI has not challenged, say that disclosure is not to be made of law enforcement records when disclosure would interfere with proceedings. ATF made a judgment, which it's entitled to make and which should get deference, that interference would result. It has — we have submitted declarations from agents involved in the investigation identifying harms that could be expected to result. But how can we as a court determine in every single case agency is going to come forward and say, oh, it's going to hurt our investigation, can't give you anything, sorry? I mean, at some point, it's like, well, is that speculation? The fact that, oh, if we give you information, maybe informants are going to stop coming forward. Well, that's speculation. We don't know that's the case. It's been three years. Is there still informants out there? Will they — will it have a chilling effect on them? I mean, at some point, it's like your reason for — it's law enforcement investigation, we're not going to give it to you. At some point, that — you've got to go beyond that and say, well, some of it may be, but not all of it. And it puts us in a difficult situation of having to just blindly accept the law enforcement agency's reason that it'll affect our investigation. Well, Your Honor, this is a matter that courts address routinely in FOIA requests. FOIA contains an exemption for law enforcement records where disclosure would interfere with enforcement proceedings. Agencies regularly submit declarations that are very similar to the types of declarations submitted here. You can look at examples in the cases I cited. They often quote the declaration. And courts make a determination. And in FOIA, as in TUI, there's no balancing that goes on.  And if it has, then that — the information is — is withheld. Now, under TUI, when we have a — a party in state court litigation that is not against the — involved in litigation directly against the government, as CFI is here, that party has no right to the information in the government's possession. The TUI regulations permit a discretionary decision as to whether to release the information, and they specifically provide that information will not be released in this circumstance. CFI has not attacked that regulation. And so all the agency did is apply the regulation straightforwardly. And what this court should do is look at the agency's action there. In this respect, this court's decision in Hacey, which I believe Judge Owen is familiar with, that involved a TUI request made on the officer of the comptroller of the currency. OCC did an analysis under its regulations, and this court said that's reasonable, we won't disturb it. That should be the analysis here. Look at the regulations. Did — ask whether ATF considered what it was required to consider under the regulations, which it did, and ask whether its conclusion was reasonable and explained, you know, so that it didn't make an arbitrary or capricious decision. All those requirements have been satisfied here. So, again, I just ask the court to keep in mind the posture of this case, which is an APA review. The standard of review is deferential. ATF's decision to give priority to the public safety and interest in securing — identifying who's responsible for a crime and facilitating prosecution, that decision is not arbitrary or capricious. I understand that CFI is in a difficult position here, but the solution is for the court to extend the proceedings to give ATF time to — Well, would ATF be willing to give an ex parte presentation to the State court judge saying this is real, this is not made up, we have facts, we have evidence, and you should, you know, CFI is between a rock and a hard place. The judge is saying I have no evidence, and we're going to trial. ATF is not a party to the State court litigation and does not, I think, generally get involved on behalf of private litigants in civil litigation, where, you know, it's a parallel — You just can't be bothered. You've got all the information, and it's just to hell with them, basically. Well, ATF is — ATF is a law enforcement agency charged with conducting this type of investigation, identifying who's responsible, and gathering evidence for a prosecution. ATF is adhering to its responsibilities that way and preserving the integrity of its investigation, and I — I submit that that is not an irrational or arbitrary thing for a law enforcement agency to do. Are you saying if their request was more specific, maybe you could work with them and give them some things? Absolutely. And that's exactly what we did in this case. When they came forward and they said, you know, here are specific items we want. We want a photograph of the crater. We want a voicemail recording. We want measurements of the crater. Why won't you give them witness statements? I'm sorry? Why won't you give them witness statements? Well, the agents identified several harms that can come from disclosing witness statements. One, it provides significant insight into the direction of ATF's investigation, revealing what questions were asked of whom. There are certain circumstances in which we don't want to disclose who the witnesses are. There's kind of general examples that could be confidential informants or jailhouse informants. Disclosing statements also permits the construction of consistent but obstructive fabrications by the parties responsible. They can look at what people said, and they can change, you know, their own view to fit in with that. Also, disclosing statements provides for the disclosure of inconsistent statements. That allows the people who made inconsistent statements to correct them when they see, oh, I've, you know, made some mistakes here. It also can make innocent mistakes look bad, and people might look at a statement where someone said two different things and assume that person is lying and then, you know, harass that person. Are you in a position to say when there might be an indictment, or is this still a wide-open investigation that we just don't know, or is it coming to a close, or can you even tell us that? I do not know of a timeline at this point. So we couldn't say the case is going to come to an end in six months or nine months. We don't know. No, I don't believe we know that. But I do know that ATF is a... Would an indictment make a difference, or would you still say we can't give you this because someone is under indictment and we have a trial going that's going to come up, so we can't give you anything while this case is pending? That is correct. The interest behind the privilege and behind FOIA Exemption 7, which codifies the privilege, would still hold, as the Supreme Court recognized in Robbins-Tyre, that the foremost objective that Congress had was to prevent harm to the government's ability to present its case in court. That's really the objective of the enforcement proceedings that are interfered with. All right. Thank you very much. Ms. Reed, you have some rebuttal time. I'd like to address a couple of the questions that the Court asked of Mr. Pullum. Mr. Pullum argues, and the ATF has argued all along, the solution is for the state court to stay this matter, the civil matter, in deference to the criminal investigation. We would love for that to happen, and we have sought that relief repeatedly. The ATF has not only not joined in those efforts, it has actively opposed our efforts to get the state court to stay the civil litigation. We filed, and this is in the record, at 270 to 338, after the district court pulled down the in-camera hearing that it had scheduled on the motion for summary judgment, based on the evidence that the government submitted publicly. The government submitted a bunch of ex parte material. We didn't know what it was, what it contained. The court pulled down the hearing, stayed the case. We then proceeded to negotiate for weeks with the ATF, what can you let us do in the state court to support a stay, because as this court likely knows, it's almost impossible to stay a civil litigation in deference to a criminal investigation, unless you have the investigative agency's support. They would not let us even say that the ATF favored a stay, that the ATF's investigation would likely be concluded at a particular time, which was the court's particular interest. It was concerned this would be an indefinite stay. And we asked, we ultimately filed a motion with both courts, the federal and the state court, asking that the judges speak to each other, and that the federal judge, in an ex parte communication with the state judge, which is permitted, simply confirm that the timing we were asking for in the stay request was consistent with what the court knew of the ATF. That's all we asked for. The ATF vehemently opposed that relief, and said that it was an end run around our request. Mr. Pullum has talked about the materials that they produced to us. We did make further requests in the course of our negotiations. We continued to try to narrow the request based on what little information the government would give us about what there was, and the courts put its finger on it. Without knowing exactly what they have, it's hard for us to narrow our request. We've at every turn expressed our willingness to do that, to try to negotiate a narrower scope. What did they give us? They gave us a voicemail recording that they took from a witness, and deleted from his computer when they took it, so that we had a transcription of it someone had made. And in fact, we were being accused, one of our co-defendants was being accused of spoliation, because the ATF, in copying it, deleted it. They gave us that. We've sent 15 photographs of pieces of debris, photographs that were taken by the plaintiff's experts in the investigation, and said, how about just telling us where these were found? Just the map of these. And we got back too much trouble. That's going to be too much work for us. The problem, the fundamental problem, and then they gave us a crater mapping report, and some data, but it required a data key, that we spent months negotiating with them, and saying we cannot use this crater map, it does not tell us how deep the crater is, without this one piece of data, and the ATF refused to give it to us. So yes, they've given us a few things, and by the way, that exchange, those exchanges with us, were submitted, described, ex parte to the court. So in the ex parte record, there are letters to me. Why were those submitted ex parte? Why were those not submitted publicly? There's no possible justification. In fact, the vast majority of what was submitted ex parte is utterly innocuous descriptions of I'm an agent, I investigated the event, 15 people died, we've done some testing, and very generic descriptions of the types of harms that Mr. Pullum just described, untied to any specific evidence in this case. That is the standard that is required to assert law enforcement privilege. Mr. Pullum argues the TUI regulations. The TUI regulations do not themselves create any privilege, and that is clear in the case law. We've cited several cases on that point, the Puerto Rico case, In Re Packaged Ice, I think is the name of the case. The TUI regs don't create privileges, and if you look at 16.26b5, the categories of information that the department says it won't generally produce, they reflect existing legal privileges. Information that cannot be produced by law, information that's barred from being produced by regulation, and b5, the only basis they've asserted as the basis for withholding this information, is a codification essentially of the law enforcement privilege. They argued in their own motion for summary judgment that their action was not arbitrary and capricious because it complied with the law enforcement privilege standard. That standard in this court, in the Fifth Circuit, is set in Coughlin, and it is set in In Re Department of Homeland Security, and it includes a balancing test that can overcome the privilege. We have overcome it. This is the unicorn, Your Honor. This is the case. This is the one case where the litigant's need clearly outweighs the government's interest, at least in not disclosing some of this physical evidence. And we would respect the request not just that you reverse and remand, but to the extent it is possible for this Court to do so on an expedited basis, we request that relief. Thank you. All right. This is what you need to do. By Friday, this Friday, you submit a letter to the ATF requesting specific limited evidence and admissions as to their position on whether the file was criminally set and whether it was not caused by your product. ATF has one week from Friday to reply with a production or legally specific authorities for refusing. I want you to have your agents listen to this argument, and you need to tell them that they issue a statement from the agents as to why this matter should not be stayed in State court pending the conclusion of your investigation if you cannot produce these specific items requested by the CFI. I want a declaration from ATF. You said your agents keep saying this, that you don't know, that the agents say this. Have the agents or you submit a statement on behalf of ATF from the agents explicitly saying why they object to staying this matter in the State court proceeding, in the civil action? All right, and we'll retain jurisdiction of the case, so let us know if you need anything else. All right, we're at recess until 9 o'clock tomorrow.